HILLER & SKOGLUND, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ATLANTIC CREOSOTING COMPANY, INC., A MARYLAND CORPORATION, DEFENDANT-APPELLANT, AND CONTINENTAL CASUALTY COMPANY, AN ILLINOIS CORPORATION AUTHORIZED TO DO BUSINESS IN THIS STATE, UNIVERSAL PILE CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND BOROUGH OF WOOD-RIDGE, A MUNICIPAL CORPORATION, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 26, 1962—Decided March 23, 1962.

Before Judges GOLDMANN, FREUND and FOLEY.

*Mr. Ira D. Dorian* argued the cause for appellant.

*Mr. Aaron W. Nussman* argued the cause for respondent (*Messrs. Back and Nussman,* attorneys).

The opinion of the court was delivered by

FREUND, J. A. D. Defendant Atlantic Creosoting Company, Inc. (Atlantic) appeals from so much of the judgment of the Superior Court, Chancery Division, as: (1) discharged the municipal lien claim filed by it against moneys due to plaintiff Hiller & Skoglund, Inc. (Hiller) from defendant Borough of Wood-Ridge, N. J.; and (2) ordered Wood-Ridge to release and pay to plaintiff the sum of $22,393.30. By an order the judgment has been stayed pending this appeal. Atlantic had filed its lien claim alleging there was due $22,393.30 from its debtor, Universal Pile Co., Inc. (Universal), a subcontractor of Hiller in its construction of a sewage treatment plant for Wood-Ridge.

On November 25, 1959 plaintiff entered into a contract with Wood-Ridge for the performance of certain work in the construction of a sewage treatment plant. Plaintiff subcontracted to Universal for the delivery and installation of certain creosoted pilings necessary for the performance of that contract. It was stipulated that prior to any pilings' being supplied by Atlantic for use on the Wood-Ridge project, Universal was already indebted to Atlantic for $26,707.53 on a book account. Between December 21, 1959 and January 26, 1960 pilings having a value of $22,393.30 were delivered by Atlantic to Universal for use in connection with the Wood-Ridge project.

On February 3, 1960 Universal, having completed its subcontract, submitted to Hiller an invoice for $39,815.75, representing the full payment due for the piling work done on the sewage plant. Hiller paid this bill in full on February 19. The same day Universal forwarded its check to Atlantic for $15,000, which was cashed. When this check was forwarded, no instructions were given as to the account to which the check was to be applied. On May 2 Universal forwarded to Atlantic an additional check for $5,000. On the face of the $5,000 check there was a notation of "on a/c."

Meanwhile, Atlantic had on April 27, 1960 filed with Wood-Ridge its notice of lien claim for the $22,393.30 due it from Universal.

The pertinent provision of the Municipal Mechanics' Lien Law, *N. J. S.* 2A:44–128, provides:

"Any person who, as * * * materialman, * * * in pursuance of or conformity with the terms of any contract for any public improvement made between any person and a public agency * * * furnishes any materials, * * * toward the performance or completion of any such contract, shall, on complying with the provisions of sections 2A:44–132 and 2A:44–133 of this title, have a lien for the value of the labor or materials, or both, upon the moneys due or to grow under the contract and in control of the public agency, to the full value of the claim or demand. * * *"

It was agreed that Atlantic had complied with all the procedural requirements of the statute and that Atlantic is a materialman within the meaning of its provisions.

On May 23, 1960 Wood-Ridge informed Hiller for the first time that Atlantic had filed a lien claim. The general contractor claims that this was the first information it received that the moneys due for the pilings used in the sewage plant had not been paid. Wood-Ridge retained the sum of $22,393.30 from the balance due on the general contract. Subsequently the court ordered the moneys to be deposited in an institution paying interest thereon.

On May 31, 1960 Universal forwarded to Atlantic a third check for $2,393.30 which bore the legend "Hiller & Skoglund paid in full." Atlantic refused to accept the check as written. It was stipulated in the pretrial order that this check could be received and credited to the amount of the lien claim, without the attached condition. Later, Universal informed Atlantic not to cash the check, and it has continued to remain unpaid.

The trial judge determined that Universal had directed that the payments of $15,000 and $5,000 were to be applied towards the payment of the Wood-Ridge project and not to its general account. The judge further held that since .

Atlantic had failed to credit the $20,000 against the Hiller-Universal subcontract, its filed claim was far in excess of the amount due, the provisions of *N. J. S.* 2A:44–133 had not been complied with, and therefore the entire claim was void and must be discharged. A final judgment for $30,612.83 was entered representing the balance of Universal's indebtedness to Atlantic.

It is clear that even though a subcontractor has been paid in full by the general contractor, the fund payable to the general contractor by the municipality is not thereby relieved of liability from the claim of the subcontractor's materialmen. *Atlantic City Lumber Co. v. Atlantic City,* 104 *N. J. Eq.* 483 (*E. & A.* 1929); *Wills v. James,* 99 *N. J. Eq.* 10, 12 (*Ch.*), affirmed o. b. 100 *N. J. Eq.* 360 (*E. & A.* 1926). *Cf. Grover v. Bd. of Education, Franklin Twp.,* 102 *N. J. Eq.* 415 (*Ch.* 1928), affirmed o. b. 104 *N. J. Eq.* 197 (*E. & A.* 1929).

The general rule governing the application of payments is also settled. In the first instance, the debtor has the legal right to direct that any payment he makes shall be applied to whichever of two debts he chooses. If he gives no directions, the creditor may himself select the application. *Long v. Republic Varnish Enamel, etc., Co.,* 115 *N. J. Eq.* 212, 216 (*E. & A.* 1934); *Naidech v. Hempfling,* 127 *N. J. L.* 430, 432 (*Sup. Ct.* 1941); *Grover v. Bd. of Education, Franklin Twp., supra,* 102 *N. J. Eq.,* at *p.* 417; 40 *Am. Jur., Payment,* § 110, *p.* 792.

Atlantic contends that the trial judge committed reversible error in finding that Universal had directed that payments made to Atlantic on its indebtedness were to be applied to the Wood-Ridge project. The finding is claimed to be against the weight of credible evidence and the result of mistake. Hiller, on the other hand, claims that the factual determination is predicated on conflicting testimony and should not be disturbed. Our responsibility is to review the evidence and to determine whether that finding was correct or a mistaken one. *Minardi v. Nocito,* 66 *N. J.*

*Super.* 187, 193 (*App. Div.*), certif. denied 36 *N. J.* 31 (1961); *Gregory Manor v. City of Clifton,* 53 *N. J. Super.* 482, 492 (*App. Div.* 1959).

 The issue of the application of the moneys received by Atlantic from Universal was entirely factual and involved a determination of the credibility of the witnesses. On a review of any civil cause involving issues of fact not determined by the verdict of a jury, as here, we are authorized to make new or amended findings of fact. However, due regard must be given to the opportunity of a trial court to judge of the credibility of witnesses. *R. R.* 1:5–4(b) made applicable to the Appellate Division by *R. R.* 2:5. *Abeles v. Adams Engineering Co., Inc.,* 35 *N. J.* 411, 423–424 (1961); *Kievit v. Loyal Protect. Life Ins. Co.,* 34 *N. J.* 475, 490 (1961); *Smith v. Peninsula House, Inc.,* 65 *N. J. Super.* 341, 344–345 (*App. Div.* 1961); *Capone v. Norton,* 11 *N. J. Super.* 189, 193 (*App. Div.*), affirmed 8 *N. J.* 54 (1951). It is clear that the rule permits a greater scope of review in a non-jury case. *Graham v. Onderdonk,* 33 *N. J.* 356, 360 (1960); *Greenfield v. Dusseault,* 60 *N. J. Super.* 436, 444 (*App. Div.*), affirmed 33 *N. J.* 78 (1960).

We are convinced that the preponderance of the evidence does not support the factual findings of the trial court.

 The burden of proof to establish that the payments aggregating $20,000 were to be applied to the account of Universal for furnishing pilings to the Wood-Ridge project was upon plaintiff. *Federal Deposit Ins. Corp. v. Miller,* 130 *N. J. L.* 626, 628 (*E. & A.* 1943); *Guerin v. Cassidy,* 38 *N. J. Super.* 454, 460 (*Ch. Div.* 1955); 40 *Am. Jur., Payment,* § 281, *p.* 895; 70 *C. J. S. Payment* § 97, *p.* 303.

Lillian M. Young, the president-treasurer of Universal, testified that although her company's purpose in paying Atlantic the $20,000 was to have that amount applied towards the Wood-Ridge account, she could not remember communicating that purpose to Atlantic.

After the payment by Universal of the $15,000 a conference was called by Atlantic for the purpose of discussing the liquidation of all moneys owed by Universal. The meeting was held on February 26, 1960 in New York between representatives of the debtor and the creditor. Those who attended on behalf of Universal were John E. Schwartz, the general manager, and Kenneth B. Greenwald, its accountant.

Schwartz testified that he had previously directed that a check for $15,000 be drawn to the order of Atlantic. He had not discussed with any representatives of Atlantic how the payment was to be applied. His testimony in this respect is as follows:

"Q. * * * Were there any instructions given to Atlantic Creosoting as to how that $15,000 was to be applied. A. Given to Atlantic Creosoting?

Q. Yes, by you. A. No, not by me where it would be applied, no, not to Atlantic Creosoting.

Q. Then that $15,000 was paid to Atlantic Creosoting by this check that is in evidence, and there were no instructions from you as to how the money would be applied. Is that correct? A. That is correct."

He agreed that Universal had a running account with Atlantic that had been in arrears for a substantial period of time. On cross-examination Schwartz testified that Atlantic's representatives at the meeting were disappointed that they had received only $15,000 against the Hiller subcontract. He further testified that an agreement was reached at the New York conference that Universal "would pay them the remainder of the money for the Hiller & Skoglund account when we finished the job we were doing at the time, I think the H bean [sic] pipe at the time. We would pay the remainder on that plus completing jobs from then on we would pay them $1,000 on the old account, plus any piles we used on any job that we ordered."

Greenwald recalled the meeting in New York. He testified that Atlantic's spokesmen were quite disturbed as "they had been promised that they would receive full payment on

the completion of the Hiller & Skoglund job for the materials delivered, * * * but had only been paid $15,000 on that particular job." His testimony substantially corroborated the testimony of Schwartz in respect to the understanding as to payment of the unpaid balance due to Atlantic. Greenwald conceded that no instructions had been given before the meeting as to the application of the $15,000 and that the notation "on a/c" on the $5,000 check referred to Universal's general account.

Our review of the testimony of Schwartz and Greenwald convinces us that there was no express declaration made at any time by Universal to Atlantic that the moneys were to be applied to plaintiff's account. The fact that Atlantic knew that the $15,000 was paid from funds received from plaintiff does not indicate a declaration of appropriation. Nor do the circumstances raise an inference of direction of payment. As to the $15,000, the New York meeting was subsequent to the issuance, receipt and application of the check and does not constitute an implied direction. The "on a/c" notation on the $5,000 check in itself belies such a direction.

Charles H. Slingluff, Atlantic's assistant sales manager, testified that in December 1958 he had been in communication with Mrs. Young to urge payment on her company's running account which had never been paid up to date and was then in arrears to the extent of $27,000. After his company had supplied the pilings for the Wood-Ridge job and received only the $15,000 payment there remained unpaid a balance of about $35,000. Slingluff then arranged the meeting in New York since his company's patience with Universal's delinquency had become exhausted.

Slingluff was present at the New York meeting and claims that the conference reviewed Universal's financial position and resulted in Universal's making a series of promises to pay off its account as soon as possible from anticipated funds. Universal also promised that it would endeavor to pay off the old account at the rate of $1,000 per month.

He repeatedly denied there was any agreement that the Wood-Ridge account was to be paid from the moneys received from Hiller.

The testimony of Slingluff was substantially corroborated by Harry Simmons, Atlantic's vice-president in charge of sales, who also attended the meeting.

With the sole exception of the conference of February 26, 1960, there was a complete absence of any proof that Universal had directed either of the two payments to be credited to the sewage plant job. The checks bore no instructions that they represented payment for piles supplied on the Hiller subcontract nor was there any forwarding letter requesting the application of the moneys. The conduct of the debtor would support the conclusion that it did not intend any particular application of that payment, but rather that it was to be applied to the running account.

From our review of all the proofs, we are clearly convinced that the meeting was held only to discuss the long overdue unpaid balance of the delinquent debtor. The dealings between Atlantic and Universal, beginning in the latter part of 1959 regarding the debtor's account, were an attempt to find a way to reduce Universal's over-all indebtedness, not to arrange an agreement as to the application of any payments. Under all the circumstances, we cannot reasonably believe that at the New York meeting Atlantic gratuitously acknowledged that it would apply the $20,000 against the least secured indebtedness of Universal. The meager evidence offered by plaintiff's witnesses as to any arrangement that may have been reached at the New York meeting was heavily outweighed by the complete absence of any other evidence by plaintiff as to the application of its payments. Accordingly, we hold that plaintiff's evidence clearly did not preponderate in favor of a finding that the $20,000 had been directed to apply to the subcontract with Hiller.

The judgment is reversed and remanded with direction that the lien claim be reinstated.